MAPLES v. O'BRIEN et al.

(Supreme Court, Special Term, Westchester County.  November, 1908.)

1. MORTGAGES (§ 38*)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE.

   Evidence *held* to require a finding that a conveyance of property to defendant was, in fact, a mortgage.

   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 108; Dec. Dig. § 38.*]

2. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—RECEIVER—TITLE TO PROPERTY.

   A receiver in supplementary proceedings takes only the right of possession of the debtor's realty, and not the title thereto.

   [Ed. Note.—For other cases, see Execution, Cent. Dig. § 1174; Dec. Dig. § 409.*]

3. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—CONVEYANCES TO RECEIVER.

   Where a judgment debtor had an equitable interest in certain real estate, the title to which was in the name of another, who was, in fact, a mortgagee, a conveyance of the property by the debtor and his wife to the receiver was effective to convey such equitable interest.

   [Ed. Note.—For other cases, see Execution, Cent. Dig. § 1174; Dec. Dig. § 409.*]

4. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—RECEIVERS—CONVEYANCES OF EQUITY—RIGHTS OF RECEIVER.

   Certain real estate belonging to a judgment debtor was conveyed to B., who, in fact, took only a mortgagee's interest, after which the debtor and his wife conveyed the property to the debtor's receiver in supplementary proceedings, and, before action brought by the receiver against B., he conveyed the land to innocent purchasers for value. *Held*, that the receiver was not entitled to follow the land into the hands of such purchasers, but was only entitled to judgment against B. for the difference between his claims against the debtor with interest and the proceeds of the sale.

   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1174, 1177; Dec. Dig. § 409.*]

Action by Joseph Maples, as receiver in supplementary proceedings of F. P. Roberge, and others, against William O'Brien and others. Judgment for plaintiff.

H. G. McDowell, for plaintiff.
Daniel Daly, for defendants O'Brien.

MILLS, J.  This is an action brought by the plaintiff, as receiver of the property of the defendant Roberge, appointed in supplementary proceedings taken against said Roberge as a judgment debtor, to secure the interest, if any, which said defendant Roberge had in cer-

tain real property situated in the town of Greenburgh, Westchester county, in or near the locality of North White Plains, at the time of the commencement of the action, viz., February 6, 1907, when the notice of pendency of action was duly filed.

The evidence appears to me to establish the following facts without substantial dispute: On the 1st day of June, 1896, the plaintiff was by a justice of the Supreme Court in the First District appointed receiver in such proceedings. The order so appointing him was filed and recorded in the office of the county clerk of New York county on the 2d of June of that year; and the receiver's bond, duly approved, was also filed and recorded in said office on the 29th of June of the same year. No certified or other copy of said order was filed in the office of the county clerk of Westchester county. Within a short time after the 26th of May, 1897, a deed of said real property by the defendant Roberge and wife was duly executed and delivered to the plaintiff as such receiver. In December, 1893, one Maria N. Winne being the owner of said premises, which consisted of a farm containing about 68 acres, conveyed the same to the defendant Roberge by deed duly acknowledged and recorded. At the time of said conveyance, said premises were subject to a mortgage previously given thereon by the said Winne to Charles Blandy for the principal sum of $1,000, and also to a mortgage which had been given previously thereon to Mooney & Shipman for the sum of $3,500. Roberge did not assume, by his deed or otherwise, the payment of either mortgage. Proceedings were duly taken by action in this court to foreclose the Blandy mortgage, and resulted in the usual judgment of foreclosure and sale, which was duly entered March 24, 1897. The referee appointed in said judgment proceeded to advertise the premises for sale, and such sale was had on the 26th of May, 1897. The defendants William O'Brien and said Roberge had for many years been on intimate terms; and O'Brien had prior to May 24, 1897, made numerous loans to Roberge, so that upon that date the latter owed him some $7,000 or $8,000.

The evidence does not indicate that Roberge at the time had any other property to which O'Brien might look for payment. The amount due upon the Blandy mortgage, including interest and costs, then amounted to the sum of $1,593.51, and there appears to have been $2,000 due on the Mooney & Shipman mortgage; and one Gray held a claim of some sort, not clearly explained by the evidence, against the premises, or the interest of Roberge therein, amounting to $600. Roberge called O'Brien's attention to the impending sale of the property, and discussions resulted between them as to the nature of which their testimonies conflict. It is undisputed, however, and established by the testimony of both, that on the 25th of May, 1897, O'Brien, with moneys raised upon notes given by him and his wife to Roberge and discounted in the bank, purchased both of said mortgages and the foreclosure judgment, paying therefor the said sums last above named, respectively, and taking the assignments to himself in his own name, and also that he paid off the Gray claim or lien to the amount of $600. On the following day, with Roberge, he attended the foreclosure sale at White Plains, and in the latter's presence bid for the property

$1,000, which he shortly thereafter paid to the referee, and which the receiver, after deducting $118.75 as his fees and expenses, repaid to him as the then assignee and owner of the mortgage and judgment. The referee's deed to him, O'Brien, was executed on the 28th of June, 1897, and duly recorded on July 1st of that year. From that time to the 12th of September, 1906, the said O'Brien continued to be the record owner of the property, when he deeded the premises to one Emma E. Reid by a conveyance which was duly recorded on the 11th of October, 1906. The property was purchased by several persons, who took title in the name of the said Reid under a written contract of sale, which was made on the 7th of May, 1906. They made their purchase and took their title in entire ignorance that Roberge had or claimed any interest in the property, and must be regarded here as innocent purchasers for value, and as having taken the title to the property free from any claim whatever on the part of Roberge. They paid to said O'Brien for the property the sum of $41,-000, viz., $11,000 in cash and $30,000 by a purchase-money mortgage, which mortgage at the commencement of this action was held by the defendant Mary O'Brien, the wife of the defendant William O'Brien. During the long interval—i. e. from 1897 to 1906—during which O'Brien held the record title to the property, Roberge rented the same to various people and received and appropriated to his own use the rents, which in the aggregate amounted to approximately $1,000. O'Brien appears to have permitted him to continue to all appearances to act as the owner and possessor of the property during that interval.

The claim now made by Roberge, through the plaintiff, is that shortly before O'Brien purchased the property at the foreclosure sale an agreement was entered into between the two, O'Brien and Roberge, that he, O'Brien, should loan to Roberge enough money to purchase the mortgages and pay the outstanding liens, and should buy the property at the foreclosure sale and hold the property as security for Roberge's indebtedness to him—that is, his prior indebtedness and such expenditures to be so made by O'Brien—and that O'Brien's proceedings were taken under and pursuant to such agreement, and that, therefore, the deed by the referee to O'Brien should be regarded in equity as a mortgage, and that the title in equity should be regarded as having been in Roberge, subject to such mortgage. This claim is denied entirely by O'Brien. Roberge, as a witness, has testified not only to the making of such agreement orally, but also that on the 24th of May, 1897, just before the purchase of the Blandy mortgage by O'Brien, O'Brien gave him a writing signed by him, which embodied the agreement. Roberge claims that the original of such writing has been lost by him, and he produces and puts in evidence a purported copy thereof. The testimony given by Roberge and his friends Hayes and Edelman, the purported witnesses to such writing, taken by itself, is far from satisfactory. The explanation of the loss of the original writing did not appear to the court at first to be credible, and, if the case rested upon such testimony alone, I should not feel warranted in finding that such writing was actually made and given. However that may be, the circumstances clearly proven seem to indicate

very clearly that the agreement claimed by Roberge and the plaintiff to have existed was, in fact, made between O'Brien and Roberge, and that O'Brien's purchases were under and pursuant to such agreement, whether the same was reduced to writing or not. The following circumstances bring my mind to this conclusion:

First. It is clear that O'Brien was brought into the matter by Roberge as his friend. The fair inference is that the purpose was that. O'Brien should in some way assist Roberge. Upon defendant's theory of the matter, there was no possible help to come to Roberge out of the transaction. He does not appear to have been personally liable upon any of the claims against the property, except, perhaps, it might have been the claim of Gray, the nature of which is not clearly explained by the evidence. In short, the theory of the defense affords no explanation whatever of Roberge's undisputed action in the matter.

Second. The money with which O'Brien bought the mortgages and liens and paid the referee's expenses was raised upon notes made by O'Brien and wife to Roberge and indorsed by the latter, and were evidently regarded by O'Brien as loans of his credit to Roberge. Indeed, O'Brien, as a witness, while denying the agreement claimed by Roberge, referring to the money used by him in purchasing the mortgages and paying the Gray lien or claim, said:

"I did not get anything for it, only his note that he would pay it back to me; and I have all the notes and he still owes me the money yet."

It is inconceivable how, if the transaction were as O'Brien here claims it to have been, Roberge could have been indebted to him for what he, O'Brien, paid in purchasing the property for himself. In O'Brien's behalf there was put in evidence a note, dated May 25, 1897, the day of the purchase of the mortgages, for the sum of $2,200, made by O'Brien and wife to Roberge and indorsed by the latter, upon which it is conceded the money, $2,200, was raised at the bank for use in making such purchases. Such note was for the period of four months. and at the end of that period, viz., September 25, 1897, was renewed by a similar note for a like amount and a like period. The circumstances do not permit of the inference that O'Brien could have been borrowing the credit of Roberge for his, O'Brien's, business. They seem in connection with the other undisputed facts of the case to require the conclusion that O'Brien four months or thereabouts after he received the referee's deed regarded Roberge as indebted to him, as, indeed, he says in his testimony he did, for the very money with which O'Brien had made the purchase. It seems to me plain that he could have entertained such view of the matter only if it were substantially true, as claimed by the plaintiff, that he made the purchase and took the deed as between himself and Roberge as a mortgage.

Third. During the period of eight or nine years during which O'Brien held the record title of the property, he permitted Roberge to deal with it as apparent owner, to rent it as he pleased, and to receive for himself and use the rentals.

Fourth. O'Brien did not deliver or return to Roberge any of the evidence of the latter's indebtedness to him—e. g., notes— as he would

naturally have done if the taking of the property by him had been regarded as a payment of those obligations.

Fifth. In 1903 O'Brien permitted Roberge to sell to one Taylor timber off of the farm to the amount of $150, and, when Taylor, having in some way learned apparently that the record title was in O'Brien, demurred to giving Roberge a check for the price until he had the direction of O'Brien, or to buying the timber from Roberge, Roberge took Taylor to O'Brien, and O'Brien, in the presence of a credible witness who has testified, told him that the property was Roberge's, and, in substance, that it was proper to pay him, Roberge, for the timber. Accordingly Taylor gave to Roberge directly his check for the timber, which is in evidence, being dated October 9, 1903.

These circumstances especially, with the general tendency of the evidence in the case, satisfy my mind that the contention of Roberge is substantially correct, and that O'Brien did take the property with the view of holding it simply as security for his advances and Roberge's indebtedness to him, and with the agreement, upon being repaid those, to reconvey the property to Roberge, I cannot upon any other theory make the conduct of the parties, clearly proven, appear consistent and intelligent.

It is claimed in behalf of the defense that the plaintiff has shown no title as receiver to the interest which, if any, Roberge had in the property at the time of the commencment of the action. It is true that the plaintiff, as receiver, by the order appointing him, did not obtain title to the property, and, indeed, would not have obtained title to it had he filed a certified copy of such order in the office of the county clerk of Westchester county. Chadeayne v. Gwyer, 83 App. Div. 403, 82 N. Y. Supp. 198; National Bank v. Bussing, 147 N. Y. 665, 42 N. E. 345. The deed by Roberge and wife to the receiver, however, was effective to convey such interest. Graham v. Lawyers' Title Insurance Company, 20 App. Div. 440, 46 N. Y. Supp. 1055; Chadeayne v. Gwyer, 83 App. Div. 403, at page 406, 82 N. Y. Supp. 198. As the property itself was before the commencement of this action conveyed by O'Brien to innocent purchasers for value, the plaintiff cannot be permitted to follow the property in their hands, but his claim must be remitted to the proceeds of the sale in the hands of the defendants O'Brien.

The plaintiff, therefore, is entitled to judgment holding the interests of O'Brien in the property to have been those of a mortgagee for the amount of his advances, expenses, and claims against Roberge with interest, and for relief appropriate to that situation. The form of the decision, especially as to the relief to be afforded, should be settled upon notice.